Argued June 10; affirmed July 13, 1948

STATE *v.* WOOD

195 P. (2d) 703

*Donald Verne McCallum,* of Baker, argued the cause for appellant.   On the brief were McCallum & McColloch, of Baker.

*Fred A. Miller,* Assistant Attorney General, of Salem, argued the cause for respondent.   On the brief were George Neuner, Attorney General, of Salem, and C. T. Godwin, District Attorney for Baker County, of Baker.

Before ROSSMAN, Chief Justice, and LUSK, KELLY, BAILEY, BRAND and HAY, Justices.

KELLY, J.

On the 7th day of October, 1925, in the circuit court in and for Lane County, Oregon, defendant was convicted upon a plea of guilty of the crime of burglary; and shortly before one o'clock in the morning of the 12th day of May, 1947, defendant was arrested in the city of Baker, Baker County, Oregon, by a police officer and thereupon found to have in his possession a revolver.   Defendant was taken by the arresting officer and another policeman to the police station where the arresting officer first directed a charge of vagrancy to be entered against defendant and then asked that the charge against defendant be changed to that of carrying a concealed weapon.

On the said 12th day of May, 1947, the District Attorney for Baker County, Oregon, filed a complaint in the Justice Court for District No. 1 in Baker County, Oregon, charging defendant with the crime for which later to-wit on December 15, 1947, defendant was tried

and convicted in the Circuit Court in and for Baker County, Oregon.

· To the first indictment against defendant, which was returned by the grand jury on October 28, 1947, upon the charge under consideration, defendant demurred; whereupon the district attorney confessed error and asked that the matter be resubmitted to the grand jury. The second indictment was returned on the 18th day of November, 1947.

On December 12, 1947, defendant demurred to said second indictment on four grounds: (1) That said indictment did not substantially conform to the requirements of Chapter 7, of Title 26, O. C. L. A.; (2) That more than one crime is charged in the indictment; (3) That the facts stated do not constitute a crime; and (4) that the grand jury had no legal authority to inquire into the crime charged, because the same is not triable within Baker County.

This demurrer was overruled by the trial court, and at the time appointed to receive defendant's plea, defendant tendered a plea of not guilty and former conviction. The trial court declined to enter a plea of former conviction but defendant's plea of not guilty was entered.

Defendant presents ten assignments of error embracing four controlling questions:

(1) Was error committed by the trial court in refusing to receive defendant's plea of former conviction?

(2) Does the indictment upon which defendant was tried state facts constituting a crime?

(3) Was the arrest of defendant by the police officer of the city of Baker illegal?

(4) Was error committed by receiving the testimony of Mr. J. S. Murray, the chief collector and identification officer of the Oregon State Penitentiary, whose testimony identified defendant in the instant case as the same person who was convicted of burglary in Lane County in 1925?

Section 12 of Article I of the Constitution of Oregon provides that no person shall be put in jeopardy twice for the same offense, and Section 26-841, O. C. L. A., provides that there are three kinds of pleas to an indictment; a plea of: (1) Guilty; (2) Not Guilty; (3) A former judgment of conviction or acquittal of the crime charged, which may be pleaded either with or without the plea of not guilty.

■ The basis of the plea of former conviction in the case at bar was the fact that theretofore defendant had been convicted of burglary in Lane County. While that conviction was a material element of the crime for which he was tried in Baker County, it did not comprise former conviction in the sense of the defense of former conviction in the instant case. No error was committed by rejecting defendant's plea of former conviction.

In determining the sufficiency of the indictment in suit, we must apply the statutory mandate as follows:

"Words used in a statute to define a crime need not be strictly pursued in the indictment, but other words, conveying the same meaning may be used."

Section 26-713, O. C. L. A., Vol. 3, p. 308.

So also, must the further statutory provision be followed, namely:

"The indictment is sufficient if it can be understood therefrom: * * * (6) That the act or omission charged as the crime is clearly and dis-

tinctly set forth, in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended." Subdiv. 6, Section 26-714, O. C. L. A., Vol. 3, p. 308.

The charging part of the indictment, upon which defendant was convicted, is as follows:

"The said Hugh Leonard Wood on the 12th day of May, A.D., 1947, in the said County of Baker and State of Oregon, then and there being, and then and there being a person who had heretofore been convicted of a felony against the property of another and against the government of the State of Oregon, to-wit: the crime of burglary by said Hugh Leonard Wood committed in Lane County, State of Oregon, on the 16th day of August, 1925, at which time and place said Hugh Leonard Wood feloniously broke and entered a certain building, to-wit: the Domestic Laundry building located at Number 143 Seventh Avenue, West, in the City of Eugene, Lane County, State of Oregon, which building was then and there the property of another, and for which felony the said Hugh Leonard Wood was thereafter duly indicted and then on the 7th day of October, 1925, duly convicted upon said indictment in the Circuit Court of Lane County, Oregon, and having been so convicted of said felony the said Hugh Leonard Wood did on the aforesaid 12th day of May, 1947, and in Baker County, State of Oregon, wilfully, unlawfully and feloniously have in his possession and under his control a firearm capable of being concealed upon the person, to-wit: a revolver, said act of defendant in so possessing said firearm being contrary to the statutes in such cases made and provided, and against the peace and dignity of the state of Oregon."

The relevant provisions of the statute under which defendant was convicted are as follows:

"On and after the date upon which this act takes

effect no unnaturalized foreign-born person and no person who has been convicted of a felony against the person or property of another or against the government of the United States or of the state of Oregon or of any political subdivision thereof shall own or have in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person, or machine gun. The term 'pistol,' 'revolver,' and 'firearms capable of being concealed upon the person,' as used in the act, shall be construed to apply to and include all firearms having a barrel less than 12 inches in length.'' Section 25-112, O. C. L. A.

Obviously, the words ''firearm capable of being concealed upon the person'' conveys the same meaning when used in an indictment charging the unlawful and felonious possession by a former convict of a firearm, to-wit, a revolver capable of being concealed upon the person as the above quoted statutory construction requires.

In 1925, the California Court of Appeal for the First District reversed the order of the Superior Court of Fresno County sustaining a demurrer to an indictment using the same phraseology as that used in the instant case. *People v. James,* 71 Cal. App. 374, 235 P. 81. Its course does not seem to have been overruled, although more than two decades have passed since its ruling was made.

■ No error was committed in overruling defendant's demurrer to the indictment in the instant case.

■ As to defendant's contention that his arrest was illegal, we have but to refer to the statutory authority of a peace officer to act without a warrant. The statute provides that a peace officer may without a warrant arrest a person when the person arrested has committed a felony. Section 26-1532, O. C. L. A. At the trial of

defendant, it was convincingly proved that when he was arrested defendant was committing the felony charged in the indictment.

■ Defendant claims that the court erred in not suppressing certain evidence and in not directing the return of his personal property including the firearm in suit. This claim is based upon the assumption that defendant's arrest was illegal. We think that the arresting officer did not exceed his authority in the manner in which he arrested defendant.

Mr. J. S. Murray, an official of the Oregon State Penitentiary as stated, after identifying defendant as the person convicted of burglary in Lane County was asked when defendant was released from the penitentiary, and he answered: "On March 11, 1942."

Defendant's counsel objected. The objection was overruled, an exception was noted and the court said: "He has already answered the question." While Mr. Murray was still on the stand, the following proceedings were then had:

"Mr. Godwin: I note that the sentence judgment is dated October 7th, 1925, and is marked received October 8th, 1925, and the term is not to exceed three years. That would make it expire not later than October 7th, 1928. How did it happen it extended over until 1942 when he was discharged?

"Mr. McCallum: We object to any further reference in this connection or to any further questions. I move that anything this man has said in answer to them so far be stricken from the record. It doesn't make any difference if he was there for twenty or thirty years. The statute under which this thing is brought doesn't say how long a man has to be in jail. There was only one former conviction that was even mentioned in this indictment. They are trying to go beyond the record of the trial

court in the first case. That's the only competent evidence of the fact he was under this restriction.

"The Court: I think that objection should be sustained."

■ While, very properly, the trial court could have instructed the jury to disregard the testimony to which defendant's counsel objected, we are not justified in reversing this case because the jury were not so instructed.

The judgment of the circuit court is affirmed.

Mr. Chief Justice ROSSMAN concurs in an opinion.

BAILEY and LUSK, JJ., dissent.

---

ROSSMAN, C. J., specially concurring.

The attack upon the sufficiency of the indictment urges that since the indictment does not state that the concealed weapon, which it accuses the defendant of having carried, had a barrel less than twelve inches in length, the demurrer should have been sustained. Section 25-112, O. C. L. A., being the section of our laws which the defendant was accused of having violated, was § 2 of chapter 260, 1925 Oregon Laws. The latter contained seventeen sections and many provisions. One of the latter follows:

"The terms 'pistol', 'revolver', and 'firearms capable of being concealed upon the person', as used in this act, shall be construed to apply to and include all firearms having a barrel less than twelve inches in length."

Section 26-712, O. C. L. A., says:

"The words used in an indictment must be construed in their usual acceptation, in common

language, except words and phrases defined by law, which are to be construed according to their legal meaning."

Therefore, the term "a firearm capable of being concealed upon the person", as employed in the indictment, must be deemed as having the meaning set upon that phrase by § 25-112. I concur in the views expressed by Mr. Justice KELLY in this phase of the case, but add the foregoing as explanation:

I come now to the legality of the arrest and of the search. The arresting officer was W. F. Mann, a member of the police department of the city of Baker, who was acting in conjunction with another officer by the name of Ray Tipton. A careful reading of the record has satisfied me that Officer Mann, upon arresting the defendant, told him that the charge was vagrancy. I believe that the arrest preceded the search. It is well established that an officer may lawfully search his prisoner after the arrest so as to assure himself that the prisoner bears no weapon with which he can injure the officer or effect his escape. The search which was made by Officer Tipton after the arrest disclosed the concealed weapon. When the defendant was taken to the police station the charge was changed from vagrancy to the one set forth in the indictment.

The question now occurs as to whether or not the arrest was lawful. Section 26-1532, O. C. L. A., says:

"A peace officer may without a warrant arrest a person: (1) for a crime committed or attempted in his presence; (2) * * *."

Section 26-1534 says:

"When arresting a person without a warrant, the officer must inform him of his authority and the cause of the arrest, except when he is in the actual commission of a crime * * *."

Officers Mann and Tipton both wore police uniforms and police caps. No one claims that the defendant failed to recognize them as police officers.

Section 23-1310, O. C. L. A., defines vagrancy in the following words:

"Every person without visible means of living, who * * *; every idle or dissolute person * * * who wanders about the streets or highways, at late or unusual hours of the night * * *, and every person who shall conduct himself in a violent or riotous, or disorderly manner * * *."

I direct attention to the term "disorderly manner".

Officers Mann and Tipton were patrolling the streets of Baker after midnight in a prowl car when they observed the defendant upon a dark street. They were unacquainted with him and had never seen him before. He was walking east on Valley Street toward First Street and had stepped from the curb into the street. According to Mann, the defendant "kept throwing his head back and then he would jerk it back, his coat collar was turned up and he kept throwing his shoulders up." Due to these circumstances the officers thought that they ought to watch him. When their eyes fell upon him he got back upon the sidewalk and resumed his easterly direction. At that moment the car in which the officers were riding was a few feet from the intersection of Valley and Second Streets, that being the intersection from which the defendant had come. The officers decided to go to the intersection, make a U-turn and thereby keep in sight of the defendant. Mann was the driver of the car and Tipton looked out of the rear window as they approached the intersection so that he could observe the defendant. The latter at once broke into a run and rounded a

building at the southeast corner of First and Valley Streets known as the VFW building.

When the police car had made the U-turn and got alongside the VFW building, Mann stopped it and ran south on First Street, that being the direction in which the defendant had gone. Paralleling First Street on the opposite side of the VFW building was an alley. Tipton hastened south down the alley. South of and adjacent to the rear of the VFW building was a vacant area in which were a couple of fences. When Mann entered the vacant area he could see, so he swore, "a head bobbing over there," that is, near the fences. It is evident that the defendant had to run rapidly in order to reach First Street, turn south into that street, run down First Street to the rear of the VFW building and then make his way in the vacant lot to the vicinity of the fences in the short time that the officers made the U-turn, parked their car and entered the vacant lot. It is seen from the description that has just been given that the defendant, after he was first seen by the officers, had virtually reversed the direction in which he was going when first seen. When Mann saw him in the vacant lot the defendant was still running and was almost beyond the range of Mann's voice. As Mann entered the lot he shouted to the defendant to stop. When Mann was asked, as a witness, "Did he stop?" he answered, "No, sir. He picked up speed." He again called to the defendant to stop and again met with no response. When he shouted his command a third time the defendant stopped. Then Mann approached the defendant and asked him why he was in a hurry. When no reply was received, the arrest was made.

Mann swore, "I am sure I could drive up, turn around and go back before a man goes two-thirds of

the block if he is just walking along and not in a hurry. * * * He was in pretty much of a hurry. * * * He had to be to get that far ahead of us.''

The defendant did not testify. However, there is before us an affidavit signed by him which accompanied a petition which he filed for the return of the revolver. It recites that the defendant lived in Portland, but gives no street address. According to it, the defendant entered Baker by automobile, and wishing to send a telegram, parked his automobile and was walking toward the business district when the officers observed him. Going on, the affidavit states that after the defendant had walked a couple of blocks he noticed that he was still some distance from the business district and thereupon decided to return to his car. In that way the affidavit accounts for the defendant's reversal of direction. It fails, however, to explain his haste and change of streets.

From the foregoing it will be observed that the officers were going about their business of patrolling the streets when they observed the defendant. The latter's peculiar conduct attracted their attention. They, however, did not say a word to him, but decided to reverse their direction so that they could watch his actions. At that moment he broke into a run, disappeared around the corner of a building and shortly entered a vacant area. When seen in the area he was still running and was going in a direction virtually opposite to that which he was pursuing when first seen. The arresting officer had to adopt a lively pace to keep up with the fleeing defendant and found it necessary to yell the word "Stop" three times. When Mann overtook the defendant he asked for an explanation and, receiving none, made the arrest. The hour was past midnight, the streets were dark, and the

defendant had fled from the streets into a vacant space which was crossed with concealing fences. No less a source than the Book of Proverbs brings down to us through the ages the observation, ''The wicked flee when no man pursueth.'' I think that the officers were justified in believing that the defendant at the time of his arrest was conducting himself in a disorderly manner. Our statute deems one who acts in such a manner a vagrant. The arrest was, therefore, lawful.